IN THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF OHIO,
EASTERN DIVISION

Frank D. Korth
4945 Yantis Drive
New Albany, OH 43054.

Case No. **C2 05 410**

**Plaintiff**

**JUDGE SARGUS**

vs.

**COMPLAINT**

J. P. Morgan Chase & Co.
(Successor by merger to Bank One
Corporation)
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801
(Statutory Agent)

[Jury Demand Endorsed Hereon]

**MAGISTRATE JUDGE ABEL**

and

JP Morgan Investment Advisors, Inc.
(fka Banc One Investment Advisors
Corporation
c/o Ct Corporation Systems
1300 E. 9th St.
Cleveland, OH 44114
(Statutory Agent)



and

William C. Dierker
4080 Oxford Dr.
Columbus, OH 43220,

**Defendants**

### Jurisdiction and Venue

1. This action arises under the Age Discrimination in Employment Act (ADEA) 29 U.S.C. § 621

   *et seq..*, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 20003-2(a).

2. This action further arises under Ohio Rev. Code § 4112, *et seq.* and the common law of Ohio.

3. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 because the action arises under the laws of the United States.

4. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1331 because Plaintiff's state law claims are so related to Plaintiff's federal claims over which this Court has original jurisdiction that they form part of the same case or controversy.

5. Plaintiff has exhausted all necessary administrative prerequisites to suit having filed a charge of discrimination with the United States Equal Opportunity Commission; more than 60 days have elapsed since the charge was filed by Plaintiff Korth ; and Plaintiff Korth received his Notice of Right of Suit dated April 22, 2005 (a copy of which is attached hereto as Exhibit 1).

6. Venue is proper in the Southern District of Ohio, Eastern Division because the incidents giving rise to the claims alleged herein arose in Franklin County, Ohio.

**Parties**

7. Plaintiff Frank D. Korth is an individual residing in New Albany, Ohio.

8. Defendant J. P. Morgan Chase & Co. ("Chase") is a corporation organized under the laws of the State of Delaware having its principal place of business in New York, New York.

9. JP Morgan Investors, Inc. ("JP Morgan") is a corporation organized under the laws of the State of Ohio having its principal place of business in New York, New York; and JP Morgan was known as Banc One Investment Advisors Corporation ("BOIA") prior to an amendment of its Articles effective on or about February 25. 2005 which changed BOIA's name to JP Morgan

2

Articles effective on or about February 25. 2005 which changed BOIA's name to JP Morgan Investors, Inc. (All references herein to "Defendant JP Morgan" include as appropriate reference to Banc One Investment Advisors Corporation).

10. Defendant Dierker is an individual residing in Franklin County, Ohio.

**Allegations Common to All Claims**

11. On or about July 1, 2004, Bank One Corporation merged into J. P. Morgan Chase & Co., and Defendant Chase became the successor to Bank One's liabilities including Plaintiff's claims as set forth herein. (All references herein to "Defendant Chase" include as appropriate reference to Bank One Corporation).

12. Plaintiff Korth was employed by Defendant JP Morgan as a Grade 8 investment executive from August 30, 2000 until April 29, 2004 at which time Defendant JP Morgan wrongfully terminated Plaintiff.

13. At the time Plaintiff Korth was hired express promises were made to him by authorized agents and employees of BOIA and/or Chase with the intent that he rely upon them in making his decision to accept the position with Defendant JP Morgan.

14. During pre-hiring negotiations, Plaintiff Korth expressed concern to authorized agents or employees of JP Morgan and/or Chase over the need for a written severance provision.

15. In response to these expressed concerns, authorized agents or employees of JP Morgan and/or Chase represented to Plaintiff Korth that JP Morgan and/or Chase provided a separation package to all Grade 8 and higher executives when Plaintiff Korth was hired in 2000 and thus JP Morgan

3

16. Authorized agents and/or employees of JP Morgan and/or Chase promised Plaintiff Frank Korth that he would be entitled to severance benefits which included one full year of salary continuation, out-placement services, full vesting and participation in all incentive plans and health insurance coverage for the one-year post-termination period.

17. Authorized agents and/or employees of JP Morgan and/or Chase made this promise with the intent that Plaintiff Korth rely upon it in making his decision to accept the position with Bank One.

18. In making his decision to accept the position with Defendant JP Morgan Plaintiff Korth in fact and justifiably relied to his detriment upon such promise as made to him by JP Morgan and/or Chase.

19. Plaintiff Korth was hired in 2000 as a Senior Portfolio Manager in the Private Equity Portfolio (PEP) team of JP Morgan.

20. The beginnings of unlawful acts by JP Morgan and/or Chase and Defendant Dierker did not start until after Plaintiff Korth was transferred from the Diversified Strategies team to Defendant Dierker's so-called Value Team in April 2003.

21. Plaintiff Korth's performance with the Private Equity Portfolio team and the Diversified Strategies team was exemplary.

22. When Plaintiff Korth was hired, he reported to Rick Jandrain, CIO Equity, and his performance was based on the large cap Private Equity Portfolios (PEPs).

23. One of the portfolios, the Growth PEP, was over 4.0 percent behind its benchmark when Frank joined the PEP team in August of 2000.

4

23. One of the portfolios, the Growth PEP, was over 4.0 percent behind its benchmark when Frank joined the PEP team in August of 2000.

24. Four months later, it finished the year less than 1.0 percent behind its benchmark.

25. Due to Plaintiff Korth's years of experience managing growth equities, he was credited with this Growth PEP turnaround by the Private Equity Portfolio agents or employees of JP Morgan and/or Chase.

26. This portfolio went on to outperform its benchmark in 2001 and 2002. In 2000, 2001, and 2002, various portfolios of the five PEP portfolios received performance "star" awards from BOIA's management team. Their outstanding performance was cited on wall plaques that hung in the main JP Morgan and/or Chase Equity conference room.

27. In 2001, after Plaintiff Korth was promoted to Managing Director for the PEP team, he refocused the five PEP portfolios and created the Value PEP from the Equity Income PEP. In late 2002, and now a member of Michael Weiner's Diversified Strategies team, he, again, helped restructure this Value PEP into a deep value Managed Equity Portfolio (MEP). This MEP Value portfolio outperformed its benchmark by over 1000 basis points in 2003.

28. Plaintiff Korth's PEP portfolio performance was accomplished, even though in 2001, he was also named as the Team Leader for the Portfolio Management Group's Mid-Market Institutional group.

29. This team had over ten members when it was managed in the Portfolio Management Group (PMG), however, as it became part of his JP Morgan Equity team, it was reduced to five members. Besides the management of the PEP team and the five new PMG personnel, Plaintiff

5

Korth also took charge of, reorganized, and corrected numerous major deficiencies in several thousand PMG mid-market institutional accounts.

30. During the late 2002 and the early 2003 restructuring of the Private Equity Portfolio team into the new Diversified Strategies team, Plaintiff Korth played a significant role in the meetings that hired five MEP sector analysts.

31. Plaintiff Korth also helped construct the Growth MEP, the Value MEP and the core/blend Equity MEP from their corresponding PEP portfolios.

32. Finally, in April of 2003, Plaintiff Korth was given his latest and, as it turned out, his last BOIA assignment -- the portfolio management responsibility for the core/blend Diversified Mid Cap fund.

33. In April 2003, Plaintiff Korth along with the core/blend Diversified Mid Cap portfolio were reassigned from Michael Weiner's core/blend Diversified Strategies team to Defendant Dierker's Value team.

34. In January of 2004, with word circulating of the impending J. P. Morgan/Chase merger, Defendant Dierker delivered his annual review of Plaintiff Korth, who suddenly and for the first time in his tenure was evaluated as "needs improvement" despite consistent excellent reviews during the period from 2000 through 2002 (as one would expect given his consistent accomplishments for the Bank).

35. The change from the Diversified Strategies team to the new Value team philosophy, the change from a large cap focus to a mid cap company focus, the loss of direct information on growth stocks which were a large portion of the core/blend benchmark, the loss of direct contact

6

with his former support team of Diversified Strategies sector analysts, and the muted flow of information on new core/blend ideas (especially new growth ideas) from his new dedicated Value team analysts, presented Frank with challenges.

36. There is, however, no substantive justification for the vicious turnaround in Plaintiff Korth's status within BOIA Equity dealt to him by Defendants Chase, JP Morgan and Dierker. In absolute terms, the Diversified Mid Cap fund that Plaintiff Korth was assigned had a gross return of 31.73 percent in 2003 and had a net return for the 2004 YTD of 3.36 percent through April 27, 2004.

37. On April 20, 2004, agents and/or employees of J. P. Morgan Fleming from New York and London met with Plaintiff Korth and other BOIA professionals to review the status of BOIA funds and to get acquainted in view of the impending merger.

38. At this meeting Plaintiff Korth enjoyed this review of his progress in turning around the performance of the once moribund core/blend Diversified Mid Cap portfolio and he got on well with these evaluation agents and/or employees.

39. On April 29, 2004, Plaintiff Korth was called into a meeting by Defendant Dierker, and in the presence of Verlin Horn, was unceremoniously fired.

40. When Plaintiff Korth asked if his termination was merger related, all Defendant Dierker would say is that his termination was "performance related." When Plaintiff Korth asked what benefits would be made available to him, Horn and Defendant Dierker looked down at the table and said that they did not know and that he should contact Ms. Jean Hinsman, BOIA Equity's HR Partner.

41. Plaintiff was 58 years of age at the date of his termination of employment.

42. Following his termination, the first thing Plaintiff Korth did was to request a complete copy of his personnel file and copies of his personal reports and performance records for the public and private funds that he and his teams managed while at JP Morgan, which information is crucial in Plaintiff Korth's pending job search. To date, Plaintiff Korth has still not received copies of his reports and his portfolio performance records from JP Morgan and/or Chase.

43. When Plaintiff Korth was furnished an excerpted personnel file he discovered that after nearly four years and several performance review periods, the only evaluation remaining in his personnel file was the maliciously adverse one authored by Defendant Dierker in January of 2004; and that all of the favorable reviews were missing from his personnel file.

44. Plaintiff Korth reiterated his request for all of the prior favorable reviews. The Human Resources representative, finally, admitted that the performance reviews were maintained by the department heads such as Defendant Dierker, in this case, and that the missing reviews from prior periods could not be located.

45. The termination of Plaintiff Korth was wrongful and unlawful.

46. Plaintiff Korth's termination was based on manufactured and unsupported pretexts devised by JP Morgan and/or Chase and Defendant Dierker.

47. Defendant Dierker's motive to effect Plaintiff Korth's termination is as transparent as it is unlawful. With the impending merger, Defendant Dierker feared for his own future as the manager of the Large Cap Value fund. In the post-merger structure, Defendant Dierker and other JP Morgan and/or Chase executives expressed in meetings that multiple large cap funds

8

such as Value, Growth and Diversified would not be needed by the combined Chase and Bank One entity. Defendant Dierker and other JP Morgan and/or Chase executives did, however, believe that Bank One's mid and small cap funds would survive the JP Morgan merger, as there is a need for multiple funds in these classes.

48. In an attempt to insure his future with J. P. Morgan Chase, Defendant Dierker knew that he had to use his position and resources to create and preserve a slot for himself as a mid cap or small cap portfolio manager.

49. This was precisely the class of fund, the Diversified Mid Cap fund that Plaintiff Korth was then managing for BOIA at the behest of Defendant Dierker. In creating his January 2004 evaluation, given the impending merger talks, Defendant Dierker was setting the stage for the action he needed to take to attempt to insure his continued tenure by eliminating Plaintiff Korth, in order to eliminate a seasoned and older manager before the merger in order to make way for younger managers (including Defendant Dierker) who might survive the merger once the older managers were gone.

50. By latching on to a small or mid cap fund, the younger managers were more likely to survive and the action to terminate Plaintiff was known to, or should have been known to Defendants JP Morgan and/or Chase.

51. Defendants JP Morgan and/or Chase acquiesced in, and/or actively participated in the implementation of Defendant Dierker's plan to make way for the retention of himself and other younger managers by the pretextual termination of Plaintiff Korth.

52. As of the date of Plaintiff's termination of employment Defendant Dierker was 41 years of age.

53. In the past two years, the oldest four BOIA Equity portfolio managers in Columbus have been the ones that were forced out -- forced to retire, forced to take a package, and, in Plaintiff Korth's case, out and out fired with no benefits.

54. Plaintiff Korth's portfolios, on average, performed better than the younger portfolio managers' portfolios; yet Defendants JP Morgan and/or Chase chose to keep as their employees the younger portfolio managers with the weaker records.

55. Plaintiff Korth has suffered loss of earnings, loss of fringe and severance benefits, loss of incentive benefits, loss of opportunity to engage in gainful employments, humiliation, embarrassment, and loss of reputation as the result of Defendants' violative conduct as alleged herein.

**FIRST CLAIM**
**[Age Discrimination – ADEA / Title VII]**

56. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

57. At all material times, Defendants JP Morgan and/or Chase (and prior to the merger Bank One, Plaintiff Korth's employer) has been engaged in commerce within the meaning of the ADEA and Title VII and was engaged in an industry affecting commerce.

58. At all material times, Defendant JP Morgan and/or Chase (and prior to the merger BOIA and Bank One) employed 20 or more employees for each working day in each of 20 or more calendar weeks in the preceding calendar year and Defendant JP Morgan and/or Chase were each an Employer within the meaning of ADEA.

59. Plaintiff Korth was fully qualified for his position and at all times performed his duties capably.

10

60. Plaintiff was 58 years of age at the time of his termination and falls within the age group protected by ADEA.

61. Plaintiff was terminated on account of his age.

62. Defendants JP Morgan and/or Chase retained and/or replaced Plaintiff Korth with a substantially younger, less qualified employee.

63. Defendants JP Morgan and/or Chase terminated Plaintiff Korth's employment because of age in violation of the ADEA and Title VII.

64. Defendants JP Morgan's and/or Chase's actions were intentional, willful, wanton and malicious in nature.

65. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff Korth has been damaged and is entitled to Judgment against Defendants JP Morgan and/or Chase under the ADEA and Title VII for all damages resulting from its unlawful discriminatory conduct.

**SECOND CLAIM**
**[Age Discrimination -- Ohio Rev. Code § 4112)**

66. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

67. Plaintiff Korth was over the age of 40 and qualified for his position at all material times.

68. Plaintiff Korth was terminated on account of his age.

69. Defendants JP Morgan and/or Chase replaced Plaintiff Korth with and/or retained a substantially younger less qualified employee.

70. Defendants JP Morgan's and/or Chase's actions were intentional, willful, wanton and malicious in nature.

11

71. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff Korth has been damaged and is entitled to Judgment against Defendants JP Morgan and/or Chase as provided in Ohio Rev. Code § 4112.99 for all damages resulting from its unlawful discriminatory conduct.

### THIRD CLAIM
### [Wrongful Discharge in Violation of Ohio Public Policy]

72. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

73. Ohio and federal statues have clearly articulated the public policy that employers must not discharge employees because of their age.

74. Dismissing Plaintiff Korth because of his age jeopardizes that public policy.

75. Plaintiff Korth was dismissed because of his age.

76. Defendants JP Morgan and/or Chase lacked an overriding legitimate business justification for terminating Plaintiff Korth.

77. Defendants JP Morgan's and/or Chase's conduct was willful and malicious.

78. Defendants JP Morgan's and/or Chase's conduct proximately caused Plaintiff Korth to suffer damages for which he is entitled to recovery.

### FOURTH CLAIM
### [Promissory Estoppel]

79. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

80. Plaintiff specifically reincorporates the allegations set forth in paragraphs 11- 16 above.

12

81. Defendants JP Morgan and/or Chase breached a material promise to Plaintiff when they refused to provide Plaintiff Korth with the post-termination benefit package it had promised he would be entitled to receive.

82. Defendants JP Morgan's and/or Chase's conduct proximately caused Plaintiff Korth to suffer damages and Plaintiff Korth is entitled to judgment.

### FIFTH CLAIM
[Breach of Express or Implied Contract]

83. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

84. Plaintiff Korth had an express or implied contract of employment that Plaintiff would be entitled to receive severance benefits which included one full year of salary continuation, out-placement services, full vesting and participation in all incentive plans and health insurance coverage for the one-year post-termination period.

85. Defendants JP Morgan and/or Chase breached that contract when it terminated Plaintiff Korth but refused to provide the post-termination package it had promised he would be entitled to receive.

86. Defendant JP Morgan's and/or Chase's conduct proximately caused Plaintiff Korth to suffer damages and Plaintiff Korth is entitled to judgment.

### SIXTH CLAIM
[Tortious Interference with Contract and Prospective Economic Advantage]

87. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

88. As alleged herein, Defendant Dierker purposely, maliciously and intentionally, for his own personal advantage and acting for his own benefit, manufactured an unjustified negative

13

performance evaluation of Plaintiff Korth and took other steps to interfere with and impede Plaintiff Korth's effectiveness, all for the purpose of masking his intentions of usurping the mid-cap fund managed by Plaintiff Korth as part of a strategy to enable Defendant Dierker to survive the inevitable downsizing resulting from the Bank One/Chase merger.

89. Defendant Dierker knew in advance of the merger that multiple large cap funds such as Value, Growth and Diversified (the exact type of fund Defendant Dierker was then managing) would not be needed by the combined JP Morgan and Bank One.

90. Defendant Dierker did, however, know that Bank One's mid and small cap funds would survive the JP Morgan merger, as there would a need for multiple funds in these classes.

91. In order to implement his personal survival plan, Defendant Dierker used improper and illegal means, without any justification, to interfere with Plaintiff Korth's continued employment and prospective economic advantage derived from continued tenure as fund manager, at least long enough to become eligible for the post merger severance benefits provided by Defendant Chase to a number of fund managers whose employment continued past the effective date of the merger.

92. Defendant Dierker, however, knew that if Plaintiff Korth's employment survived the merger it would be too late for Defendant Dierker to save himself from being terminated.

93. The tortious conduct alleged herein was carried out with the knowledge and consent, and or direct participation, of Defendants JP Morgan and/or Chase and said Defendants are liable to Plaintiff Korth under the doctrine of *respondeat superior* or as part of a conspiracy with Defendant Dierker.

14

**PRAYER FOR RELIEF:**

Plaintiff prays for judgment against Defendants JP Morgan and/or Chase and Dierker, jointly and severally, as follows:

1. That this Court award Plaintiff Korth such equitable relief as is propose as compensation for loss of Plaintiff's opportunity to engage in gainful employment, including relief in the form of front pay or future damages.

2. That Plaintiff Korth be awarded all lost pay and benefits in an amount not less that $685,000.

3. That Plaintiff Korth be awarded compensatory damages in an amount not less that $685,000.

4. That Plaintiff Korth be awarded punitive damages.

5. That Plaintiff Korth be awarded reasonable attorney's fees and expenses, and costs of suit.

6. That Plaintiff Korth be awarded prejudgment and post-judgment interest.

7. That Plaintiff Korth be awarded all other legal and equitable relief to which he may be entitled.

Respectfully submitted,

Of Counsel to:

Rich, Crites & Dittmer, LLC

E. J. WESP Co., L.L.C.
E. Joel Wesp (0019317)
Attorney at Law
300 East Broad St., Suite 300
Columbus, Ohio 43215-3756
Ph: (614) 228-5822
Fax: (614) 540-7466
Email: ejwesp@wesplaw.com
Attorney for Claimant

15

**JURY DEMAND**

Plaintiff hereby demands trial by jury.

*E. J. WESP Co., L.L.C.*
E. Joel Wesp (0019317)

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Frank D. Korth<br>4945 Yantis Drive<br>New Albany, OH 43054 | From: | Cleveland District Office<br>1660 West Second Street<br>Suite 850<br>Cleveland, OH 44113 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 220-2005-00179 | Legal Duty Officer | (216) 522-7445 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]* James R. Neely, Jr.,
Acting Director

2 2 APR 2005
*(Date Mailed)*

Enclosure(s)

cc: Debbie Juntunen
Employee Relations
BANK ONE CORPORATION
1111 Polaris Pkwy., Suite 1M
Columbus, OH 43240

E.J. Wesp
300 East Broad Street, #300
Columbus, OH 43215

**EXHIBIT 1**